Todd A. Bromberg (TB8212)
Thomas W. Kirby
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC  20006
(202)  719-7000
(202) 719-7207 (Facsimile)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
AUDIOVOX CORPORATION,

        Plaintiff,                    Case No.: 2:09-cv-02401-JS-ARL

  vs.

WARREN COMMUNICATIONS NEWS,    **ANSWER AND COUNTERCLAIM OF**
INC.,    **WARREN COMMUNICATIONS**
    **NEWS, INC.**
        Defendant.    **JURY TRIAL DEMANDED**
---------------------------------------------------x

      This case is about a consumer electronics company's systematic and prolonged infringement of registered copyrights in a family-owned publisher's newsletter.  When detected, the infringer, AUDIOVOX CORPORATION, initially professed a desire to settle.  Then, while the infringer pretended to be developing a response to the publisher's settlement offer, it, instead, filed this action without prior notice that settlement efforts had ended.  To assure the copyright claims will be heard here, it seeks a declaration that its massive copying was lawful.  In its Answer below, the publisher, WARREN COMMUNICATIONS NEWS, INC. ("Warren"), responds to the Complaint, demonstrating that there has been no violation or abuse by Warren and that Audiovox's extensive copying was entirely unlawful.  In the following Counterclaim, Warren states its claim for copyright infringement.

## **WARREN'S ANSWER TO AUDIOVOX'S COMPLAINT**

WARREN COMMUNICATIONS NEWS, INC. ("Warren") responds to the claims of AUDIOVOX CORPORATION ("Audiovox") as follows, denying every allegation not expressly admitted.

1. Warren admits that Audiovox purports to bring an action for declaratory relief. Otherwise denied.

2. Warren admits that Audiovox is a consumer electronics company based in Hauppauge, New York and that Audiovox faces a multimillion dollar claim for copyright infringement (as alleged in Warren's Counterclaim) arising from Audiovox's regularly forwarding Warren's daily newsletter, *Consumer Electronics Daily* ("*CED*"), to unauthorized recipients including four Audiovox employees. Otherwise denied.

3. Denied.

4. Warren admits Audiovox paid for only two subscribers but used those subscriptions to provide copies to non-subscribers. Warren began receiving information suggesting such possible infringement by Audiovox beginning in late March 2008. Warren continued to provide multiple warnings against copying with each issue but observed that the apparent infringements continued. Otherwise denied.

5. Warren admits that, upon being retained, its retained litigation counsel, Thomas W. Kirby, sent Audiovox a letter identified as a "Notice of Copyright Infringement and to Preserve Documents" on September 17, 2008. That letter requested Audiovox to cease and desist copying and to retain all related documents. It offered Audiovox the opportunity to discuss a pre-litigation amicable resolution if stated conditions were agreed to by Audiovox. Otherwise denied.

6. Warren specifically denies that it has waived any right to relief and denies each and every other allegation in Paragraph 6 of Audiovox's Complaint.

7. Warren specifically denies that it has granted any license to Audiovox that authorized Audiovox's infringing copying and Warren denies each and every other allegation of paragraph 7.

8. Denied.

9. Warren specifically denies that statutory damages authorized by the Copyright Act, 17 U.S.C. 504(c), are unconstitutional and denies each and every other allegation of Paragraph 9.

10. Warren admits that the Copyrighted works whose registration certificates are attached as Exhibit A to Audiovox's Complaint are among the copyrighted works owned by Warren that Audiovox has infringed. Warren admits that Audiovox faces copyright infringement litigation (see Warren's Counterclaim). It admits that the invitation to Audiovox to settle this matter did not succeed. Otherwise denied.

**"JURISDICTION AND VENUE"**

11. Warren admits that this Court has subject matter jurisdiction but denies that Audiovox's Complaint raises a proper claim for this Court's exercising authority to grant declaratory relief.

12. Admitted.

13. Warren does not contest venue in this District. Warren lacks knowledge sufficient to form an opinion on the truth of the other allegations of Paragraph 13 and, therefore, denies them.

## "THE PARTIES"

14. Admitted.

15. Admitted.

16. Warren admits that it offers *CED* and other newsletters it creates and publishes to potential subscribers that are located in New York and delivers issues of *CED* electronically to subscribers, such as Audiovox, that are located in New York. Otherwise denied.

## "BACKGROUND"

17. Warren lacks knowledge sufficient for it to form an opinion as to the truth of the allegations stated in Paragraph 17 and, therefore, denies them.

18. Warren admits that Audiovox is a substantial presence in the consumer electronics industry. Warren lacks knowledge sufficient for it to form an opinion as to the truth of the other allegations stated in Paragraph 18 and, therefore, denies them.

19. Warren admits that its business consists of publishing business newsletters and other publications. Warren does not contend that Audiovox publishes newsletters. However, its infringing distributions did compete with and interfere with Warren's subscription sales. Otherwise denied.

20. Warren admits that an Audiovox executive held a subscription to *CED* in April 2004 and that delivery was switched to executive Patrick Lavelle at that time. Warren's records show that the subscription had begun in March 2003. Otherwise denied.

21. Admitted that Audiovox paid for an electronic subscription for a second executive in August 2005. Otherwise denied.

22. Admitted.

23. Admitted that Audiovox subscribes with the proviso that the named Audiovox executives are the subscribers. Audiovox "subscribes" in the sense that those executives acted in the course of their duties and for the benefit of Audiovox, and Audiovox paid. Otherwise denied.

24. Denied.

25. Warren admits that on September 17, 2008, Audiovox received a cease and desist letter from Warren's retained counsel. That letter said, inter alia, that "Warren has obtained reliable information indicating that *CED* issues are routinely being forwarded to multiple readers" and stated that both "subscriptions dated back several years." Warren denies that the September 18, 2008 letter stated any position on when the infringing conduct began and specifically denies that the letter said it began in March 2008.

26. Warren admits that each issue of *CED* is a separate "work" under the Copyright Act. Warren admits that some of the issues of *CED* that have been infringed by Audiovox are covered by the certificates of registration from the U.S. Copyright Office included in Exhibit A to Audiovox's Complaint. Warren denies that those are the only issues of *CED* that Audiovox has infringed (see Warren's Counterclaim). Otherwise denied.

**"CAUSE OF ACTION**

**DECLARATION JUDGMENT OF NON-INFRINGEMENT"**

27. Warren incorporates its responses to Paragraphs 1 through 26.

28. Warren admits there is an actual controversy as to whether Audiovox infringed Warren's registered copyrights in *CED* (see Warren's Counterclaim). Otherwise denied. Warren avers that the appropriate judicial determination of whether

Audiovox has violated Warren's rights under the Copyright Act will be provided by the judgment on Warren's infringement counterclaim and denies that any declaratory judgment is necessary or appropriate.

29. Warren admits that it claims that Audiovox has infringed multiple issues of *CED* prior to receipt of Warren's September 17, 2008 cease and desist letter. On information and belief, such infringements included issues published both prior to, during, and after March 2008, the exact number of works infringed to be determined through discovery. Warren admits the copyright in each issue of *CED* is registered with the U.S. Copyright Office. Warren admits that it submits applications for copyright registration using Copyright Office Form G/DN, whose instructions require that the form cover all issues published during a given calendar month of a specified year for which registration is sought. Otherwise denied.

30. Warren admits that *CED* issues published during March 2008 are covered registration certificate number TX6-660-990, *CED* issues published during April 2008 are covered by registration certificate number TX 6-661-024, *CED* issues published during July 2008 are covered by registration certificate number TX 6-661-006, and *CED* issues published in September 2008 are covered by registration certificate number TX 6-664-367. Otherwise denied.

31. Warren admits that each registration Form G/DN submitted by Warren to the U.S. Copyright Office covers the number of *CED* issues that Warren published during the month covered by the submission. The number of *CED* issues published during a given month varies depending on the length of the month, the number of weekends in the month and the number of federal holidays in the month. Otherwise denied.

32. Denied.

33. Warren admits that, on March 28, 2008, it first received information suggesting to Warren staff that Audiovox might be engaged in unauthorized copying of *CED* issues delivered electronically to an Audiovox executive. To investigate that information and possibility, Warren began monitoring electronically (using the service ReadNotify.com) each issue of *CED* sent to that executive beginning on April 2, 2008. Otherwise denied.

34. Warren admits that it did not send Audiovox a personalized cease and desist letter prior to the September 17, 2008 letter from Warren's outside counsel. However, Warren provided notices and warnings to Audiovox about unauthorized copying in each issue of *CED* and in each email used to deliver an issue of *CED*. Otherwise denied.

35. Denied, except admitted that Warren conducted its investigation, retained counsel, and gave final notice within a period of months, although the Copyright Act allows three years.

36. Warren admits that its September 17, 2008 cease and desist letter accurately stated that Audiovox could be liable for statutory damages pursuant to section 504(c) of the Copyright Act (17 U.S.C. § 504(c)). Warren further admits that, through the Copyright Act, Congress has determined that statutory damages should reflect the public injury caused by infringement. Otherwise denied.

37. Denied.

38. Denied.

39. Denied.

## RELIEF REQUESTED

WHEREFORE, Warren requests that this Court:

A.   Grant the relief sought by Warren's counterclaim for copyright infringement against Audiovox;

B.   Enter judgment in favor of Warren and against Audiovox on Audiovox's Complaint;

C.   Award Warren its costs and attorney fees; and

D.   Award Warren such other relief as this Court deems just.

## JURY DEMAND

Warren demands a trial by jury on all issues so triable under Audiovox's Complaint.

## WARREN'S COUNTERCLAIM AGAINST AUDIOVOX

Defendant WARREN COMMUNICATIONS NEWS, INC. ("Warren"), through its undersigned attorneys, alleges its counterclaim against Plaintiff AUDIOVOX CORPORATION ("Audiovox"), as follows:

## NATURE OF THE COUNTERCLAIM

1.   This is a civil action for copyright infringement under the United States Copyright Act, 17 U.S.C. §§ 101, *et seq*. By purchasing two individual subscriptions to Warren's daily newsletter entitled *Consumer Electronics Daily*, and making multiple unauthorized copies of each issue for use in its business, Audiovox deprived Warren of revenue and earned unjust profits for itself. Warren seeks all remedies afforded by the Copyright Act, including statutory damages, or actual damages and Audiovox's profits,

and an award of costs including legal fees.  Because Audiovox disregarded clear warnings against copying, a jury is entitled to find that it willfully infringed, and to award up to $150,000 for each of the approximately 1000 issues it copied.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 17 U.S.C. § 101 *et seq.*, 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a)(copyright).

3. Audiovox is subject to personal jurisdiction in this district, and venue is proper here under 28 U.S.C. §§ 1391 and 1400(a).  Audiovox resides in this district.  Moreover, through its declaratory claim, Audiovox has consented to personal jurisdiction and venue here.

## PARTIES

4. Counterclaim-Plaintiff Warren is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Washington, DC.  Warren, a family company, was founded in 1945 in Washington, DC, where it is still headquartered.  Originally established to cover the then-emerging medium of television, Warren today is a publisher of hard news, analysis and research in the fields of telecom, broadcasting, the Internet, satellites, consumer electronics and related industries.  Warren created and publishes *Consumer Electronics Daily,* a daily newsletter reporting on the consumer electronics business sector, which newsletter appears 250 times per year.

5. Counterclaim-Defendant Audiovox Corporation is a Delaware Corporation having its principal place of business at 180 Marcus Boulevard, Hauppauge, New York.  It is a for-profit business corporation, engaged in the consumer electronics business, where it has long been a leader.

## GENERAL ALLEGATIONS

6. Warren is, and at all relevant times has been, the exclusive owner of all copyrights under Title 17 of the United States Code in certain original works of authorship, namely, issues of the *Consumer Electronics Daily* newsletter published by Warren, including the portions of each issue quoted in a cover email (the "Copyrighted Materials").

7. The Copyrighted Materials are distributed by Warren to individuals who have entered subscription agreements. Warren's Copyrighted Materials are covered by certificates of copyright registration issued by the U.S. Copyright Office, including the following:

|     | **Registered Issues** | **Registration Certificate Number** | **Effective Date** |
| --- | --- | --- | --- |
| 1.  | September 2008 (21 issues) | TX0006664367 | 10-27-08 |
| 2.  | July 2008 (22 issues) | TX0006661006 | 8-28-08 |
| 3.  | May 2008 (21 issues) | TX0006662757 | 7-8-08 |
| 4.  | April 2008 (22 issues) | TX0006661024 | 5-22-08 |
| 5.  | March 2008 (21 issues) | TX0006660990 | 4-23-08 |
| 6.  | February 2008 (20 issues) | TX0006648017 | 3-28-08 |
| 7.  | January 2008 (22 issues) | TX0006646225 | 3-7-08 |
| 8.  | December 2007 (20 issues) | TX0006646291 | 1-24-08 |
| 9.  | November 2007 (20 issues) | TX0006629701 | 12-17-07 |
| 10. | October 2007 (22 issues) | TX0006648199 | 12-3-07 |
| 11. | August 2007 (23 issues) | TX0006627351 | 9-17-07 |
| 12. | July 2007 (21 issues) | TX0006627336 | 8-14-07 |
| 13. | June 2007 (21 issues) | TX0006627352 | 7-27-07 |

|     | **Registered Issues**        | **Registration Certificate Number** | **Effective Date** |
|-----|------------------------------|-------------------------------------|--------------------|
| 14. | May 2007 (22 issues)         | TX0006587065                        | 6-27-07            |
| 15. | February 2007 (19 issues)    | TX0006550433                        | 3-23-07            |
| 16. | January 2007 (20 issues)     | TX0006550419                        | 2-5-07             |
| 17. | December 2006 (20 issues)    | TX0006508677                        | 1-22-07            |
| 18. | November 2006 (20 issues)    | TX0006660997                        | 12-22-06           |
| 19. | October 2006 (21 issues)     | TX0006508717                        | 11-24-06           |
| 20. | September 2006 (20 issues)   | TX0006528697                        | 10-27-06           |
| 21. | August 2006 (23 issues)      | TX0006508679                        | 9-20-06            |
| 22. | July 2006 (20 Issues)        | TX0006425047                        | 8-11-06            |
| 23. | June 2006 (22 issues)        | TX0006425049                        | 7-20-06            |
| 24. | May 2006 (22 issues)         | TX0006375576                        | 6-15-06            |
| 25. | April 2006 (20 issues)       | TX0006348331                        | 5-26-06            |
| 26. | March 2006 (23 issues)       | TX0006337638                        | 5-2-06             |
| 27. | February 2006 (19 issues)    | TX0006340548                        | 3-14-06            |
| 28. | January 2006 (20 issues)     | TX0006340549                        | 3-3-06             |
| 29. | December 2005 (21 issues)    | TX0006300655                        | 1-24-06            |
| 30. | November 2005 (20 issues)    | TX0006286066                        | 12-15-05           |
| 31. | October 2005 (20 issues)     | TX0006267185                        | 11-16-05           |
| 32. | September 2005 (21 issues)   | TX0006257207                        | 10-19-05           |
| 33. | August 2005 (23 issues)      | TX0006206628                        | 9-15-05            |

Warren also has applied to the U.S. Copyright Office for certificates of copyright registration for other issues, including those published in March, April and September 2007, as well as those published in June and August 2008. Those applications are

pending before the Copyright Office. Those registrations, when issued, will be effective as of their submission dates, and Warren will amend to include claims based thereon.

8. Among the exclusive rights granted to Warren by the Copyright Act are the exclusive rights to reproduce and distribute the Copyrighted works.

9. In about April 2004, Patrick Lavelle, CEO of Audiovox, arranged for a single subscription to *Consumer Electronics Daily* ("*CED*") to be delivered electronically to him at Audiovox. In about August 2005, Charles Michael Stoehr, Executive Vice President of Audiovox, arranged for a single subscription of *Consumer Electronics Daily* ("*CED*") to be delivered to him electronically at Audiovox. Both signed copies of Warren's form subscription agreement. On information and belief, the subscriptions were arranged, maintained, and used by Mr. Lavelle, Mr. Stoehr, and others in the course of Audiovox work duties, and the subscription price was paid as a business expense by Audiovox, and Audiovox has ratified their conduct in connection with the subscriptions.

10. Pursuant to 17 U.S.C. § 401, Warren placed notices of copyright on all issues of the Copyrighted Materials that were provided to Audiovox executives by Warren. Additionally, each such issue of *Consumer Electronics Daily* included express warnings against unauthorized copying, including but not limited to the statement, "Reproduction or retransmission in any form, without written permission, is a violation of Federal Statute (17 U.S.C. § 101 *et seq*.)." The cover emails – which quoted in full the *Today's News* feature from the accompanying issue – also included copyright warnings.

11. The text of the letter agreement signed by Mr. Lavelle and by Mr. Stoehr reads as follows:

> Thank you for your interest in obtaining an <u>electronic</u> subscription to **Consumer Electronics Daily.** We hope

12

you'll enjoy the added convenience and speedy transmittal that electronic delivery allows. To assure that we both understand the ground rules of your subscription, we ask that you read and agree to the following terms before obtaining a subscription.

>Under the copyright law, receiving an electronic subscription to **Consumer Electronics Daily** does not give you any different rights from those available with a print subscription. Just as you may not copy a print version of **Consumer Electronics Daily** for any reason, so, too, you may not make copies from your electronic version, even for "internal" use within your company.

>This subscription agreement allows you and your company to have only one issue of **Consumer Electronics Daily**. This means that you may only have one copy of **Consumer Electronics Daily** in all media at any one time. If you use your electronic version of **Consumer Electronics Daily** to make a hard copy printout (as we allow you to do), you must immediately erase the electronic version. If you forward a copy to someone else (even within your company), you must immediately erase the original copy from your computer. Similarly, you may not make your single electronic subscription available on a network (without obtaining a network site license) because that would give individual copies to multiple network users. To ensure electronic delivery accuracy and copyright compliance, we may use tracking software. This software forwards to us certain technical data and newsletter usage information from any computer that opens the newsletter email. We will not share this information with anyone outside the company, nor will we use it for any commercial purpose. More information about our data collection practices is at [www.warren-news.com/privacypolicy](www.warren-news.com/privacypolicy).

Please verify that you understand this agreement and are willing to abide by its terms by signing this letter and returning it to us **by facsimile at (202) 296-4461**. After receiving your signed letter, we will begin your subscription. Again thank you for your business.

12. On information and belief, beginning on or about August 2005, Mr. Stoehr, in the course of his employment, began routinely making or causing to be made and providing unauthorized copies of the Copyrighted Materials to other present and former executives or employees of Audiovox. Mr. Lavelle also caused unauthorized copies of *CED* to be provided to Audiovox employees and others. Such copying was continued by Audiovox until at least September 17, 2008 when Audiovox received Warren's written notice to cease and desist and preserve documents. Audiovox knew of and authorized these infringing activities though its agents, including Mr. Stoehr and Mr. Lavelle, benefited from them, supplied the means of copying and distributing, and had the ability to control the infringements. On information and belief, persons receiving unauthorized copies of the Copyrighted Materials further caused unauthorized copies of those Copyrighted Materials to be made or distributed.

13. Warren discovered its claims for infringement of *CED* issues between March 28, 2008 and August 22, 2008. Warren uses an electronic monitoring service named ReadNotify.com to monitor copyright compliance by its subscribers to electronically distributed newsletters. Due to financial and personnel resource constraints, Warren cannot monitor all subscribers all the time. It runs occasional spot checks on broad groups of subscribers that yield tracking histories for one or two issues. Where analysis of those histories suggests possible unauthorized copying by a given subscriber, Warren uses ReadNotify, daily for a period to see if a pattern of infringement persists, or alternatively, is observed to stop. Based on analysis of spot-check results for the March 28, 2008 *CED* issue, ReadNotify was added to the subscription delivered to Mr. Stoehr on a daily basis beginning April 2, 2008. After results had accumulated for a

period, Warren staff analyzed them and concluded, on or about August 22, 2008, that an ongoing pattern of infringement was likely and was not being self-corrected. On that basis, Warren retained outside legal counsel to pursue the matter.

14. On information and belief, approximately 1000 separate issues of the *Consumer Electronics Daily* newsletter were copied and disseminated by Audiovox, all without authority from Warren. Copyright in each issue was timely registered as described above.

15. On information and belief, Audiovox's infringements of *CED* newsletters were not isolated or aberrational, but were consistent with a pattern of systematic infringement of multiple publications, showing a willful disregard of the copyrights of periodical owners.

## CLAIM FOR RELIEF

**(Infringement of Federally Registered Copyright – 17 U.S.C. § 501, *et seq*.)**

16. Warren incorporates by reference paragraphs 1 through 15 of this counterclaim as if set forth in full herein.

17. Audiovox's unauthorized copying and distribution of the Copyrighted Materials directly infringed Warren's registered copyrights therein in violation of 17 U.S.C. § 501, *et seq*. Audiovox also is liable for the further infringements that occurred when copies it delivered were used as Audiovox induced, intended and encouraged. Audiovox is liable as a direct, vicarious, and contributory infringer.

15

18. Audiovox's acts of infringement have been willful, intentional, and in reckless disregard of and indifferent to the rights of Warren. Willfulness is established *inter alia*, because (i) converting a single paid subscription into many unpaid subscriptions is obviously wrong, (ii) Audiovox received and disregarded multiple explicit warnings against copying; and (iii) on information and belief, this copying was part of a broad pattern of infringing copyrights in periodicals.

19. At any time before final judgment, Warren is entitled to elect to receive statutory damages in lieu of actual damages and profits. 17 U.S.C. § 504(c). For willful copyright infringement, the jury may award up to $150,000 for each of the approximately 1000 willfully infringed issues. The precise number of infringed works will be determined during discovery.

20. Warren alternatively may choose to recover Audiovox's profits attributable to infringement plus Warren's actual damages. 17 U.S.C. § 504(a). The statute provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Audiovox's gross revenues over the period of the infringement are not known at this time, but will be determined during discovery.

## PRAYER FOR RELIEF

WHEREFORE, Warren prays for judgment in its favor and against Audiovox as follows:

    A.    For a money judgment:

        (1)    For Warren's actual damages for infringement, and, after an accounting, for profits attributable to the infringement.

        (2)    Alternatively, at Warren's election prior to the entry of final judgment in this case, and as an alternative to actual damages and profits, an award of statutory damages as permitted by the Copyright Act, for each of Warren's timely registered works infringed, including enhanced statutory damages of up to $150,000 per work for each of these works willfully infringed and timely registered.

    B.    For an injunction against further infringement;

    C.    For an award of pre-judgment and post-judgment interest;

    D.    For Warren's costs of this action, including Warren's reasonable attorneys fees incurred in this action; and

    E.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Warren demands a trial by jury on all issues so triable under Warren's Counterclaim.

Dated: July 9, 2009

Respectfully submitted,

By: /s/ Todd A. Bromberg
Todd A. Bromberg (TB8212)
Thomas W. Kirby
Wiley Rein LLP
1776 K Street, N.W.
Washington, D.C. 20006
tbromberg@wileyrein.com
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

*Counsel for Warren Communications News, Inc.*

PROOF OF SERVICE

I hereby certify that the attached ANSWER AND COUNTERCLAIM OF WARREN COMMUNICATIONS NEWS, INC. has been served this 9th day of July, 2009 through the court's ECF system and also has been served by frist class mail, postage prepaid, on the following:

Michael S. Elkin
Thomas P. Lane
Robert C. Turner
Winston and Strawn LLP
200 Park Avenue
New York, NY 10166
Attorneys for Plaintiff/Counterclaim
Defendant Audiovox Corporation

By: /s/ Todd A. Bromberg
Todd A. Bromberg (TB8212)

13017562